# Wagner *versus* Peterson.

P., a broker, agreed to carry railroad stock for W. at seven per cent., and bought certain shares in the New York market, W. depositing certain bonds and stock as a margin. In a time of panic, the broker afterwards began to make "extra charges" for carrying the stock, sometimes as high as one per cent. a day, which, there was evidence to show, was what he was paying New York brokers. H., who assumed to act for W., but whose agency was disputed, directed P. to sell a part of the stock ; W. did not repudiate this sale. Afterwards W., under the pressure of the high charges and of the condition of the market, directed a sale of the rest of the stocks and of the securities held as margin. This was done and an account rendered to W. who accepted the balance shown to be due him. Some eight months afterwards he brought assumpsit against P., to recover, on the common counts, the money received by P. from the sale of the stocks and the securities held as margin, alleging that the extra charges were contrary to his agreement with P., and that the sales had been unauthorized. The court below nonsuited the plaintiff on the ground that the action should have been account render and that the plaintiff had acquiesced for a length of time in the statement rendered him by P.

*Held*, that assumpsit was the proper form of action.

*Held*, that it should have been left to the jury to say whether W. had agreed to repay to P. the extra charges which P. was paying to New York brokers in the transaction, the acceptance of the balance due on the statement rendered being no more than competent evidence of such an agreement.

January 5th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the District Court of *Philadelphia county :* Of January Term 1874, No. 269.

Assumpsit by Daniel S. Wagner against Pearson S. Peterson. The *narr.* contained the common counts. The defendant pleaded non-assumpsit, &c., and the Statute of Limitations as to the recovery of usurious interest after six months.

The plaintiff's evidence at the trial (before Lynd, J.) tended to show these facts : The plaintiff employed the defendant, a banker and stock-broker in Philadelphia, to purchase and carry for him a number of shares of the stock of the Pittsburgh, Fort Wayne & Chicago Railroad Co. Purchases were made at various times from August 13th to September 7th 1869, amounting in all to three hundred shares (which by an arrangement between the company and its stockholders were afterwards converted into four hundred and forty-two shares), and the plaintiff deposited with the defendant at various times certain United States 5-20 bonds as a margin for

carrying the stock. The defendant agreed to carry them at seven per cent., as it was understood that the purchase was to be made in New York. On September 8th the defendant began to make "extra charges" for carrying the stock, running from $\frac{1}{64}$ per cent. on that day to 1 per cent. on September 25th. The defendant informed one Hewes, a broker, who had acted as a friend of Wagner in the transaction, but as a broker was to share Peterson's commission, of these charges and of the necessity of making them, which was because of the excitement in the New York stock market about the time of what is known as "Black Friday." Hewes, without authority from Wagner, then ordered Peterson to sell two hundred shares of the stock, which was done. When Hewes told Wagner of the sale and of the circumstances which led him to order it, Wagner, though much agitated, did not complain of his act nor did he repudiate it. Afterwards, on September 28th, the defendant called for an additional margin; the plaintiff could not furnish this and accordingly ordered a sale of the rest of the stock, together with fourteen additional shares which Wagner had bought and deposited with Peterson. The stocks and the securities held as a margin were accordingly sold and an account rendered to the plaintiff on October 8th, showing a balance in his favor of $395.27. A few days afterwards the plaintiff directed the defendant to buy fifty shares more of the same stock, using this balance as a margin; in November this venture was closed out and the plaintiff received a balance of $323.73 then due him.

Wagner testified that he never agreed to pay these charges, but admitted them in the account because he supposed the defendant had a right to make them and he "felt helpless" to resist. No demand was made upon Peterson till this action was begun, on July 1st 1870. Hewes testified that, thinking Peterson's charges were large, he had made inquiries of two other brokers and found that they were charging but one-half per cent., while Peterson was charging 1 per cent. The amount of the extra charges was $1233.

The plaintiff filed three bills of particulars. The first charged the defendant with 456 shares of stock at the market value and with the value of the United States bonds, and credited him with the cost of the stock and interest at seven per cent. The second made the same charges and credits except a credit of commissions and of interest at six instead of seven per cent. The third bill charged the stock at the highest market rate between the day it was sold and the trial.

A nonsuit was granted, which the court in banc, Hare, P. J., Thayer, Lynd and Mitchell, JJ., the former two dissenting, refused to take off, on the ground, first, that the action should have been account render, and secondly, that the plaintiff had acquiesced in the account rendered to him, with full knowledge and comprehension of its items, and after full time for reflection and professional advice.

[Wagner *v.* Peterson.]

The plaintiff took this writ of error, assigning for error the refusal to take off the nonsuit.

*G. L. Crawford* and *B. H. Brewster* (with them *J. L. Tull*), for the plaintiff in error.—The plaintiff sued to recover the value of certain shares of stock, held by the defendant for the plaintiff's use and sold *without notice*.

Reeside's Executor *v.* Reeside, 13 Wright 322, relied upon below, does not apply. Here the breach of duty was the sale of stock without notice : Davis *v.* Funk, 3 Wright 243 ; Sitgreaves *v.* Bank, 13 Id. 359 ; Diller *v.* Brubaker, 2 P. F. Smith 498 ; Evans *v.* Waln, 21 Id. 69 ; Deysher *v.* Triebel, 14 Id. 386 ; Smith *v.* Austin, 4 Brews. 89.

Wagner cannot be held to have ratified Peterson's acts, as he never had full knowledge of the facts : Porter *v.* Patterson, 3 Harris 235 ; P., W. & B. Railroad Co. *v.* Cowell, 4 Casey 335 ; Pitts. & Steub. Railroad Co. *v.* Gazzam, 8 Id. 340 ; Wright *v.* Burbank, 14 P. F. Smith 222.

*I. S. Sharp* and *D. W. Sellers* (*W. B. Mann* with them), for the defendant in error.—The evidence does not support an action upon the common counts : Satterlee *v.* Melick, 26 P. F. Smith 62 ; Gilpin *v.* Howell, 5 Barr 41.

No stock was sold but on the order of the plaintiff or his agent, Hewes. Even if Hewes was not his agent, the plaintiff has ratified his acts : Bronson's Executor *v.* Chappell, 12 Wall. 681 ; Baker *v.* Drake, 53 N. Y. 211 ; Negley *v.* Lindsay, 17 P. F. Smith 217 ; Lindsley *v.* Malone, 11 Harris 24.

If the plaintiff had given reasonable notice of his disapproval of both sales, the defendant could have repurchased the stock without loss, as shown by the evidence : Wynkoop *v.* Seal, 14 P. F. Smith 361 ; Horton *v.* Morgan, 19 N. Y. 170 ; Baker *v.* Drake, *supra*.

The plaintiff has never demanded the stock ; therefore he is only entitled to the market value of it at the time of the sale, and that he has received : Neiler *v.* Kelley, 19 P. F. Smith 403 ; Work *v.* Bennett, 20 Id. 484.

He could at most recover the amount over six per cent. charged for the money advanced ; but the bill of particulars does not sustain such a cause of action, and if it did, it is barred : Act of May 28th 1858, section 2 ; Heath *v.* Page, 13 P. F. Smith 108.

Mr. Justice SHARSWOOD delivered the opinion of the court, January 15th 1877.

Had the plaintiff's claim been confined to the value of the stock sold by the defendant, the nonsuit would have been unquestionably right. Admitting that, under the circumstances, the sale was a wrongful conversion, and that plaintiff might waive the tort and sue in assumpsit, the measure of his damages would be the market

[Wagner v. Peterson.]

value at the time of conversion. It is not the rule even in the action of trover in such a case, that the plaintiff is entitled to recover the highest price which the stock would have commanded at any time before the trial. That rule is confined to the case where there is a duty or obligation devolved upon a defendant to deliver such stocks at a particular time, and that duty or obligation has not been fulfilled: Neiler v. Kelley, 19 P. F. Smith 403. Here it was manifest from the plaintiff's own evidence that the defendant had fully accounted to him for the market value of the stock on the day of sale. In an action for money had and received which waives the tort, only the amount received could be recovered.

But the plaintiff showed that the defendant had charged him and retained out of the proceeds of the stocks and securities received by him several sums of money for carrying the stocks, amounting, it is alleged, to $1233. Upon this part of his case, we think that there were questions which ought to have gone to the jury. There was evidence that defendant had agreed to purchase and carry the stock for the plaintiff for seven per cent. As it appears to have been understood that the stock was to be bought and carried in New York, there was nothing unlawful in stipulating for the rate of interest which was lawful there. But without an agreement that plaintiff should reimburse defendant whatever he might have to pay brokers in New York, the defendant had no right to make such charge. Whether there was such an agreement was a question of fact for the jury. The plaintiff received notice from the defendant on the 27th September 1868, that he had made such charges of what he calls extra interest up to that day, amounting to $694. Subsequent charges were made on the 28th, 29th and 30th September. There was evidence that the plaintiff had assented to the sale of his stock after he was made acquainted with the charges, for the reason that they were rapidly eating up the securities he had pledged for margin. He afterwards received the balance due him according to plaintiff's account without objection. All this was certainly evidence that the understanding was that he was to reimburse the defendant the charges of the New York brokers; but it was for the jury and not for the court to draw the inference. There was evidence that other brokers at the same time were charging less, enough certainly to cast upon the defendant the onus of proving that he had actually been compelled to pay the sums he claimed. Bevan v. Cullen, 7 Barr 281, has no application to this case. It arose upon the plea of the Statute of Limitations—the answer to which was merchants' accounts—and what was decided below and above was, that where an account was rendered to his principal by a factor abroad, and the consignor acquiesced and ordered the balance to be shipped without objection to the items, it was an account stated, and was barred by the lapse of six

2 NORRIS—16

[Wagner *v.* Peterson.]

years. Nor has the case of Reeside's Executor *v.* Reeside, 13 Wright 322, any application. There an executrix appointed the defendant her agent or attorney to settle up a large estate, to collect assets and pay debts, and it was held that without an account stated and a balance struck, assumpsit would not lie, but the remedy must be account render or a bill in equity. There all that the defendant undertook to do was to account, and it was treated as analogous to the case of co-partners. But here in effect is a simple case of debtor and creditor. The defendant advanced money on a pledge of securities, and as a broker for plaintiff purchases stock. Stock and securities are sold, and he pays the plaintiff the balance, which he admits to be due. Surely to the extent of the money of the plaintiff which he retained by virtue of credits to which he was not entitled it was money had and received to plaintiff's use. It is clear that the defendant insisted upon these items as money actually paid by him with plaintiff's knowledge or assent. It was not, therefore, the case of money paid on an usurious agreement, barred by the lapse of six months.

Judgment reversed, and a *procedendo* awarded.